UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WILLIE C. YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:09-CV-00178 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Willie Young appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. PROCEDURAL HISTORY

Young applied for DIB and SSI on September 8, 2005, alleging that he became disabled as of September 3, 1999. (Tr. 29-30, 49-54, 56-59, 334-37.) The Commissioner denied his application initially and upon reconsideration, and Young requested an administrative hearing. (Tr. 52-59, 334-37.) A hearing was conducted by Administrative Law Judge ("ALJ") Terry Miller on April 30, 2008, at which Young (who was represented by counsel), his mother, and a

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

vocational expert ("VE") testified. (Tr. 357-418.)

On December 5, 2008, the ALJ rendered an unfavorable decision to Young, concluding that he was not disabled because he could perform a significant number of jobs in the economy despite the limitations caused by his impairments. (Tr. 18-27.) The Appeals Council denied Young's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-14, 345-56.) He filed a complaint with this Court on June 26, 2009, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II. YOUNG'S ARGUMENTS

Young alleges two flaws with the Commissioner's final decision. Specifically, Young claims that the ALJ (1) failed to properly evaluate the opinion of Dr. Adams, an examining physician, and (2) improperly discounted the credibility of his testimony of debilitating limitations. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 8-11.)

## III. FACTUAL BACKGROUND[2]

### *A. Background*

At the time of the ALJ's decision, Young was forty-eight years old, had an eighth grade education, and possessed work experience as a construction worker. (Tr. 80, 107, 152.) He alleges that he became disabled as of December 3, 1999, due to diabetes mellitus, retinopathy secondary to diabetes mellitus, multi-level degenerative disk disease of the lumbar spine, a mild wedge deformity at L1, mild lumbar spondylosis, mild cervical spondylosis, and depression. (Opening Br. 1-2.)

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 419-page administrative record necessary to the decision.

2

## B. Young's Testimony at the Hearing

At the hearing, Young testified that he is single and lives with his mother, stepfather, and nine-year-old nephew in a one-story home. (Tr. 363-64.) He stated that he went to school through the eighth grade, has never attempted to get his GED, and can read and write "[a] little" in that he can read simple messages. (Tr. 365-66.)

As to his daily routine, Young states that he is independent with his self care and that he can cook and do laundry, though he does not do these tasks very often. (Tr. 397.) His mother does the grocery shopping, cooking, laundry, and pays the bills, and his stepfather does the yard work. (Tr. 397, 399.) Young does, however, vacuum floors and wash dishes. (Tr. 397, 399.) Young stated that he lies down "quite a bit" every day, at least five times or more for several hours, but that he does try to take a walk at least once a day. (Tr. 394-95.) He further reported that four out of every seven days he lies down most of the day. (Tr. 402.) He also testified that he watches television, has no problems being around other people, and often drinks a six-pack of beer twice a week with a family member. (Tr. 392-93, 395.) He sometimes takes the bus to visit a friend. (Tr. 400.) He used to have a driver's license, but it was suspended five years ago due to a DUI charge and he has not since renewed it. (Tr. 364-65.)

Young explained that his primary conditions that prevent him from working are back pain, which he attributes to getting hit by a truck at work in 1999, and decreased vision from diabetes. (Tr. 368-69, 371.) He also reported that he has problems with his neck. (Tr. 368-69.) With respect to his back pain, Young testified that he is "hurting all the time" and experiences shooting pains down his right leg and around his waist; that the pain keeps him "up all night"; and that medication, muscle relaxers, or exercise do not relieve it. (Tr. 371-75, 400-03.) He

elaborated that his pain is aggravated by lifting, bending over "too much", and prolonged sitting. (Tr. 372-73.)

Young further reported that he experiences blurry vision two or three times a week for one to two hours, creating problems with reading, and that he has twice undergone laser surgery on his eyes. (Tr. 375-78, 380.) Young also described the problems he has with his neck, which arose from a car accident and were treated by a chiropractor. (Tr. 381.) He stated that about once a week he has trouble turning his neck and that though it hurts at times, "it's not even close to how bad [his] back hurts." (Tr. 381-82.) He also reported that he has high blood pressure, which he takes medication for, and that there is a "possibility" that he has liver and kidney damage from his diabetes. (Tr. 383-85.) Young also confided that he takes medication for depression, stating that he feels down because of his physical problems and his inability to work. (Tr. 391, 403-04.) He stated that he tries to be compliant with his medications, but admits sometimes he forgets to take them or runs out because he has not been back to see the doctor. (Tr. 386-87.)

As to his physical capacity, Young testified that he can walk for one block before resting, stand for fifteen minutes, sit for twenty-five minutes, and lift about sixteen pounds. (Tr. 387-89.) He stated that he cannot bend, stoop, or squat due to his back pain; and that he can climb only five stairs before resting. (Tr. 390-91.)

### C. *Summary of the Relevant Medical Evidence*

In June 2004, Young was seen at Matthew 25, a free clinic, for a headache and then again two weeks later for his diabetes. (Tr. 206, 213.) He was placed in diabetes education and put on Lantus insulin. (Tr. 206.) He was seen again in September for chest pain; the results of a chest

x-ray were normal. (Tr. 196.) He also complained of back and neck pain and that he needed medication. (Tr. 196.) Young visited the clinic again in October for his back problems, reporting that his symptoms continued. (Tr. 195.) The clinic questioned whether Young demonstrated "inappropriate illness behavior." (Tr. 195.) He was seen twice in November for his back pain, and once in December for his diabetes. (Tr. 178, 187, 190.) In July 2005, Young returned to the clinic for his diabetes. (Tr. 177.) Several months later, he complained to the clinic of vision problems over the last two years, confiding that he had not been taking his medications every day. (Tr. 174.)

In November 2005, Young was evaluated by Dr. Brian Adams at the request of the Social Security Administration. (Tr. 153-55.) On physical examination, Young's gait and station were normal; and he was able to walk on heels and toes, tandem walk, and squat and rise without difficulty. (Tr. 153.) His straight leg raising test was positive on the right but negative on the left. (Tr. 153.) Range of motion of his lumbar spine and right hip was reduced by twenty-five to thirty percent. (Tr. 156.) Gross movement, sensation, reflexes, and muscle strength were normal, and he was able to complete tasks requiring fine finger manipulation without difficulty. (Tr. 154-55.) He concluded that Young was able to stand or walk at least two hours in an eight-hour workday. (Tr. 154-55.)

Dr. Adams, however, further opined that Young's health conditions did not appear to be "under control", emphasizing that he "continues to be noncompliant with his diabetic diet" and that "he is not taking any anti-inflammatory drugs for his [back and neck] pain." (Tr. 155.) He thought that Young's daily living activities were affected in that he experienced significant back and neck pain when sitting for ten minutes, standing for ten minutes, walking for no more than

5

one block or five minutes, and lifting more than ten pounds. (Tr. 154-55.) Therefore, he recommended that Young follow-up with his primary care physician and begin taking anti-inflammatory medication for his chronic back and neck pain. (Tr. 155.)

In December 2005, Young returned to Matthew 25 for diabetes, high cholesterol, and hypertension. (Tr. 170.) He was referred to the eye clinic for diabetic retinopathy problems. (Tr. 170.)

In January 2006, Young was seen for a consultative eye exam by Dr. Earl Braunlin. (Tr. 157-60.) Dr. Braunlin concluded that although Young had diabetic retinopathy, "he could work as far as his eyes were concerned." (Tr. 159.)

On February 6, 2006, Dr. William Bastnagel, a state agency physician, reviewed Young's medical record and concluded that he could lift or carry twenty-five pounds frequently and fifty pounds occasionally, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 219-26.) A second state agency physician later affirmed his opinion. (Tr. 232.)

That same month, Young returned to Matthew 25 complaining of low blood sugar and constant back pain. (Tr. 163.) On March 3, 2006, an x-ray of Young's lower spine showed mild degenerative disk disease with minimal subluxation of L4 and L5. (Tr. 228.) An x-ray of Young's cervical spine showed mild cervical spondylosis. (Tr. 228.) Young returned to Matthew 25 in July for his diabetes, reporting that he had tingling in his feet and had been out of his medications for a week and a half. (Tr. 299.) He had undergone laser surgery for his retinopathy the previous week. (Tr. 299.) He was seen again in January 2007 for depression and diabetes. (Tr. 298.)

6

In February 2007, Young visited the emergency room for lower back pain, stating that he had fallen three weeks earlier and hurt his back. (Tr. 235.) He reported that his pain had progressively increased and was now radiating down his right leg. (Tr. 235.) Young's motor and sensory examinations were normal, and his straight leg rising test was negative bilaterally. (Tr. 236.) X-rays revealed that his spine was well-aligned with mild degenerative disk disease that was unchanged from the prior study. (Tr. 238.) The attending physician attributed Young's pain to a strain of the muscles or a sprain of the ligaments; he then administered medications, which reportedly improved Young's pain symptoms. (Tr. 236.)

Young was seen again at Matthew 25 in April and May 2007 for depression and back pain. (Tr. 295.) He also reported feeling short of breath occasionally. (Tr. 284.) He confided that he had not been taking his medication regularly and was drinking a six-pack of beer daily. (Tr. 284.) The physician stated that he needed to faithfully take his medications and stop drinking; encouraged him to start counseling at Park Center, which he declined; and referred him for aqua therapy. (Tr. 284.)

In June 2007, Young was seen by Dr. John Walker at the eye clinic. (Tr. 277.) He had significant macular edema and needed treatment to avoid permanent vision loss. (Tr. 277.)

In July 2007, Young reported to the clinic that he had not taken much of his diabetic medications. (Tr. 258.) He missed his next appointment and then returned in August, but failed to obtain the labs that had been ordered at his last visit. (Tr. 261.) The doctor noted Young's "extreme noncompliance". (Tr. 261.) Young was seen again at the clinic in October 2007. (Tr. 249.) A lumbar spine MRI showed mild to moderate osteoarthritis from L5 to S1 and moderate spinal stenosis at L4-5 secondary to degenerative anterolisthesis of L4 and L5. (Tr. 264.) Young

7

returned to Matthew 25 on January 9, 2008, reporting that he was feeling very depressed. (Tr. 244.) The physician again emphasized to Young the importance of taking his medications as prescribed. (Tr. 244.)

## IV. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## V. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if he establishes an "inability to

8

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On December 5, 2008, the ALJ rendered his opinion. (Tr. 18-27.) He found at step one

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

9

of the five-step analysis that Young had not engaged in substantial gainful activity since his alleged onset date. (Tr. 20.) At step two, the ALJ concluded that Young had the following severe impairments: chronic neck and back pain due to cervical and lumbar spondylosis/degenerative disk disease; diabetes mellitus with background diabetic retinopathy, status post laser surgeries, and macular edema; and reported depression and ongoing use of alcohol. (Tr. 20.)

At step three, the ALJ determined that Young's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 20-22.) Before proceeding to step four, the ALJ determined that Young's testimony of debilitating limitations was not credible and that he had the following RFC:

> [T]he claimant has the [RFC] to perform "light" work . . ., reduced as follows: sit/stand option . . .; only occasional climbing of ramps and stairs, balancing, stooping, kneeling and crouching; no constant neck turning; no constant close visual acuity or near acuity work; no exposure to hazards (i.e., work at unprotected heights or around dangerous moving machinery); and, limited to simple, routine, repetitive tasks.

(Tr. 22.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Young was unable to perform any of his past relevant work. (Tr. 25.) The ALJ then concluded at step five that Young could perform a significant number of jobs within the economy, including advertising material distributor, bagger of garments, and folder. (Tr. 26.) Therefore, Young's claims for DIB and SSI were denied. (Tr. 27.)

*C. The ALJ's Consideration of Dr. Adams's Opinion Is Supported by Substantial Evidence*

Young first contends that the ALJ failed to properly evaluate the opinion of Dr. Adams, a physician who examined him once at the request of the Social Security Administration.

Specifically, Young argues that the ALJ's decision must be remanded because although the ALJ mentioned Dr. Adams's opinion that he was able to stand or walk at least two hours in an eight-hour workday, the ALJ failed to discuss Dr. Adams's additional impression that he experiences "significant back and neck pain" when sitting for ten minutes, standing for ten minutes, walking for five minutes, or lifting more than ten pounds. Young's argument fails to warrant a remand of the Commissioner's final decision.

The Commissioner must "evaluate every medical opinion [it] receive[s]." 20 C.F.R. §§ 404.1527(d), 416.927(d). Each medical opinion, other than a treating physician's opinion that is entitled to controlling weight, must be evaluated pursuant to the following factors in order to determine the proper weight to apply to it: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d); *see generally White v. Barnhart*, 415 F.3d 654, 658-60 (7th Cir. 2005).

Here, after reviewing the objective studies of Young's back and neck and noting that the various clinical examinations of record "showed few abnormalities", the ALJ did indeed evaluate Dr. Adams's opinion, noting that he was a consultative, examining physician. (Tr. 24.) In particular, the ALJ catalogued several of Dr. Adams's findings from his November 2004 examination, including that Young had normal gait and posture and was able to get on and off the examination table, walk on heels and toes, tandem walk, and squat and rise without difficulty. (Tr. 24.) He further reiterated Dr. Adams's observation that the range of motion of

Young's spine in forward flexion was reduced and that his straight leg raising was positive on the right at sixty degrees. (Tr. 24.) The ALJ then specifically discussed Dr. Adams's conclusion that Young could stand or walk two hours in an eight-hour workday. (Tr. 24.) Considering this detailed recitation of Dr. Adams's findings, it is easy to conclude that the ALJ adequately analyzed Dr. Adams's opinion in accordance with 20 C.F.R. §§ 404.1527(d) and 416.927(d).

As Young argues, the ALJ did not specifically mention Dr. Adams's impression that Young experiences significant back and neck pain when sitting or standing for ten minutes, walking for five minutes, or lifting more than ten pounds. However, this omission does not require a remand of the ALJ's decision. The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence," so long as the Court "can track the ALJ's reasoning regarding this evidence." *Nelson v. Apfel*, 131 F.3d 1228, 1237-38 (7th Cir. 1997) (citation omitted); *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004); *Clifford*, 227 F.3d at 872; *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *cf. Stein v. Sullivan*, 892 F.2d 43, 47 (7th Cir. 1989) (remanding case where the Commissioner failed to specifically discuss or analyze *any* of the medical evidence from the claimant's treating psychologists prepared during the time period at issue in the case).

The ALJ's reasoning is traceable here. As the Commissioner explains, this statement by Dr. Adams was made in connection with his observation that Young's back and neck pain were not well controlled because he was not taking anti-inflammatory medications. (Tr. 155.) Dr. Adams then advised Young to follow-up with his primary care physician and take anti-inflammatories for his back and neck condition. (Tr. 155.) Thus, viewing his opinion as a whole, Dr. Adams documented that although Young experiences significant pain during sitting,

standing, and walking, he nevertheless is still "able to stand or walk at least two hours in an eight-hour day" and the use of anti-inflammatory medication would decrease his discomfort while performing these activities. (Tr. 24); *see Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (explaining that when reviewing the ALJ's decision, the court will "give the opinion a commonsensical reading rather than nitpicking at it"); *Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997) (acknowledging that an ALJ is entitled to make reasonable inferences from the evidence before him).

Moreover, even assuming *arguendo* that Dr. Adams's opinion was inconsistent and thus entitled to less weight than applied by the ALJ, *see* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4), the outcome does not change. *See generally Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). This is because the only other physicians of record who opined about Young's physical limitations were the state agency physicians, who concluded that he could perform "medium" work—that is, lift or carry fifty pounds occasionally and twenty-five pounds frequently, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 22); *see* 20 C.F.R. §§ 404.1527(f)(2)(i); 416.927(f)(2)(i) (stating that "[s]tate agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation").

Significantly, the record is devoid of *any* evidence from Young's treating physicians prescribing limitations that contradict the opinions of Dr. Adams and the state agency

13

physicians. Indeed, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [his] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c)). Here, Young has failed to carry that burden.

Consequently, Young's first argument is unavailing. The ALJ sufficiently considered Dr. Adams's opinion and then assigned an RFC that is amply supported by the evidence of record.[4]

*B. The ALJ's Credibility Determination Will Not Be Disturbed*

Young also argues that the ALJ erred when discounting the credibility of his testimony of debilitating limitations. Specifically, Young contends that the ALJ impermissibly "played doctor" by considering that he had received only conservative treatment, rather than surgery, for his back pain, and he also reiterates his prior assertion that the ALJ improperly reviewed Dr. Adams's opinion.

Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988); *see Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at

---

[4] Furthermore, after asking the VE what jobs a hypothetical individual with the RFC that he ultimately assigned to Young could perform, the ALJ also asked the VE what jobs that same hypothetical individual could perform if he were limited to sedentary work, rather than light work. (Tr. 412.) The VE responded that such an individual could perform work as a table worker (200 to 250 jobs in the region), hand mounter (200 to 250 jobs in the region), and waxer (200 to 250 jobs in the region). (Tr. 412-13.) Therefore, the record does not suggest that the ALJ's ultimate outcome would have been any different even if he had limited Young to sedentary, rather than light, work.

14

435; *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness . . . .").

Here, the ALJ offered at least five reasons for discounting the credibility of Young's testimony about his limitations, all of which are ultimately supported by the record. As explained above, Young challenges only two of the ALJ's reasons.

First, the ALJ observed that Young's assertion that his vision problems prevent him from working did not align with the record. (Tr. 23, 25, 368-69, 378-80.) He noted that Dr. Braunlin opined that although Young had diabetic retinopathy, "he could work as far as his eyes were concerned." (Tr. 159.) Furthermore, the ALJ accommodated Young's vision problems in the RFC by limiting him to "no constant close visual acuity or near acuity work" and "no exposure to hazards". (Tr. 22.) Wisely, Young does not challenge the ALJ's reasoning for discounting his credibility on this basis. *See Powers*, 207 F.3d at 435 (discounting a claimant's credibility due to discrepancies between his allegations and the objective medical evidence).

Second, the ALJ considered Young's appearance and demeanor at the hearing, which he thought reflected that Young probably suffered from "some chronic pain" but not to the disabling extent that he alleged. (Tr. 24.) Young also does not challenge the ALJ's consideration of this evidence. *See* SSR 96-7p (stating that the ALJ may consider his own observations of the claimant at the hearing when evaluating the credibility of the claimant's statements); *Smith*, 231 F.3d at 440 (7th Cir. 2000) (discounting claimant's subjective testimony of disabling pain based on, among other things, his "appearance and demeanor at the hearing").

Third, the ALJ considered the fact that there were several references in the record to

15

Young's noncompliance with his medication, diet regime, and physician visits. (Tr. 24.) While Young initially argued that the ALJ improperly considered his noncompliance by failing to inquire about and consider any reasons for it, *see* SSR 96-7p, Young abandoned this argument in his reply brief, and rightly so. (Opening Br. 10-11; Reply Br. 3.) The ALJ did indeed inquire about Young's noncompliance at the hearing. (Tr. 386-87.)

Fourth, the ALJ considered the results of Young's clinical examinations, which he deduced "showed few abnormalities." (Tr. 24.) Young challenges the ALJ's reasoning in this respect, reiterating that "the ALJ did not properly review the opinion of Dr. Adams who found significant limitations." (Opening Br. 10.) However, as explained earlier, the ALJ did indeed sufficiently consider Dr. Adams's opinion, reviewing that Young had normal gait and posture; was able to get on and off the examination table, walk on heels and toes, tandem walk, and squat and rise without difficulty; had reduced spinal forward flexion; and had a positive straight leg raising on the right at 60 degrees. (Tr. 24.)

Furthermore, the ALJ also discussed the results of Young's clinical examination at Matthew 25 in October 2004, reflecting that the range of motion of his extremities and back were within normal or functional limits. (Tr. 24.) He also discussed the findings from Young's February 2007 trip to the emergency room, which indicated some muscular pain but no spasms, a negative straight leg raising test, and normal sensation. (Tr. 24.) Thus, the ALJ's consideration and characterization of the results of Young's various clinical examinations in the context of his credibility analysis is indeed supported by the record. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (considering the objective medical evidence in analyzing claimant's subjective allegations); *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack

16

of medical evidence as probative of the claimant's credibility."); *Luna v. Shalala*, 22 F.3d 687, 690-91 (7th Cir. 1994); SSR 96-7p.

And finally, the ALJ highlighted the results of Young's objective studies (x-rays and MRIs), which showed "mild" to "moderate" degenerative disk findings, as a reason to discount the severity of Young's subjective symptoms. (Tr. 23-24.) In that context, the ALJ stated: "[T]he objective studies found in the submitted records do not show major or significant bony abnormalities in the back or neck that require surgical intervention." (Tr. 23-24.) Young criticizes the ALJ for this statement, asserting that he impermissibly "played doctor" by unreasonably inferring that Young's pain was less severe because he did not undergo surgery and participated in only conservative treatment. (Opening Br. 10; Reply Br. 2-3.)

Young's argument in this respect is a non-starter. The ALJ is certainly entitled to consider the types of treatment that a claimant has undergone. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (considering a claimant's use of medications and treatment measures as two factors in analyzing claimant's subjective symptoms); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (finding that claimant's subjective complaints of disabling pain were not entirely credible where the claimant's treatment was "routine and conservative"); *Ross v. Astrue*, No. 08-C-450, 2009 WL 742761, at *3 (E.D. Wis. Mar. 17, 2009) (same); *Christianson v. Astrue*, No. 3:07-cv-00485-bbc, 2008 WL 3559623, at *7 (W.D. Wis. Feb. 6, 2008) (same); *Vincent v. Astrue*, No. 1:07-cv-28, 2008 WL 596040, at *16 (N.D. Ind. 2008) (same); SSR 96-7p. Furthermore, the ALJ properly considered the fact that Young was inconsistent at times with seeking treatment even though he received his care from a free clinic, thereby mitigating any financial concerns. (Tr. 24); *see* SSR 96-7p (stating that an ALJ may draw inferences about an

individual's symptoms and their functional effects from a failure to pursue regular treatment if he first considers any explanations that the individual provides or other information in the case record that may explain his failure to seek treatment).

In sum, the ALJ adequately built an accurate and logical bridge between the evidence of record and his conclusion that Young's testimony of debilitating limitations was not credible, and his determination is not "patently wrong." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000); *Powers*, 207 F.3d at 435. Therefore, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will not be disturbed.

## VI. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Young.

SO ORDERED.

Enter for this 12th day of April, 2010.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
